UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ANN SIBISKI, DAVID SIBISKI, TOM SIBISKI,
ADAM CARLISLE, STEPHEN BARCEL,
TIM BROWN, D.J. WARREN, and DALE KELLEY,

                Plaintiffs,

    -against-

ANDREW M. CUOMO,

               Defendant.
-------------------------------------------------------------X
FEUERSTEIN, J.

**OPINION AND ORDER**
08 CV 3376(SJF)



On August 1, 2008, *pro se* corporate plaintiffs Jaguar Sales, LLC, d/b/a Jaguar Sales ("Jaguar") and Premier Sales (together, the "Corporate Plaintiffs") and *pro se* plaintiffs Ann Sibiski, David Sibiski, Tom Sibiski, Adam Carlisle, Stephen Barcel, Tim Brown, D.J. Warren, and Dale Kelley (collectively, "Plaintiffs") commenced this action against defendant Andrew M. Cuomo, in his individual capacity, asserting violations of 42 U.S.C. § 1983 ("Section 1983") and various state law claims. On November 13, 2008, Plaintiffs filed an Amended Complaint, deleting the Corporate Plaintiffs from the caption. Defendant now moves to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, Defendant's motion is granted.

I.      Background[1]

Jaguar is a limited liability corporation "in the business of obtaining magazine subscription orders for future delivery from households and businesses across [the] USA." (Amend. Compl., at ¶ 10.) Plaintiffs are independent contractors of Jaguar who "enter New York State some years and for 3 to 4 weeks out of that year . . . to solicit for magazine subscription orders." (Id., at ¶¶ 12, 14.)

On July 18, 2007, Stephen Barcel ("Barcel") contacted the City Clerk and Police Department in Kingston, New York to inform them that a group of salespeople would be in the area to solicit magazine orders. (Id., at ¶ 15.) Both the City Clerk and the Police Department informed Barcel that there were no registration requirements for magazine solicitation. (Id.)

On July 24, 2007, Adam Carlisle ("Carlisle") arrived at the Kingston Police Station to deliver a list of the names of the salespeople who would be soliciting magazine orders in the area. (Id., at ¶ 16.) Although Carlisle stated that Plaintiffs had previously obtained permission to solicit, the officer on duty told Carlisle that any salespeople needed to complete applications before they began soliciting, and that the officer was unaware of how long the approval process would take. (Id., at ¶¶ 17,18.) Carlisle then attempted to see the City Attorney, who was not in his office. (Id., at ¶ 19.) However, the City Attorney called Carlisle later that day, and informed

---

[1] As is required on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations in the complaint, though disputed by Defendants, are accepted to be true for the purposes of this motion, and all reasonable inferences are drawn therefrom in favor of Plaintiff. They do not constitute findings of fact by this Court.

2

Carlisle that his salespeople did not need to complete any applications. (Id., at 20.) Yet, when Carlisle returned to the police station with the list of names, he was met by the same opposition. (Id., at ¶ 21.)

On July 25, 2007, Barcel and several salespeople drove to Walden, New York to solicit magazine orders. (Id., at ¶ 22.) Upon their arrival, two (2) salespeople began soliciting orders, but were subsequently stopped by Officer Shawn Barry ("Officer Barry") and ticketed for soliciting without a permit. (Id.) After witnessing Officer Barry ticket the salespeople, a customer who had previously placed an order with the salespeople spoke to Officer Barry, and then requested to cancel her order because Officer Barry told her that she was "getting ripped off" and "would not get her magazine." (Id., at ¶ 23.) Officer Barry then offered the salespeople a ride back to their hotel, informing them that he had taken Mike Hill, another salesperson, back to his hotel so that he could pack and leave Walden. (Id., at ¶ 25.) He also told the salespeople that Barcel was "wanted all over the US." (Id.)

Later that day, Officer Barry arrested Barcel and another salesperson for soliciting without a permit. (Id.) After searching Barcel's automobile, Officer Barry and other Walden Police Officers transported Barcel and the salesperson to the police department separately. (Id, at ¶ 26.) Upon arriving at the police station, Officer Barry placed Barcel in an interrogation room, handcuffed to a desk, while he spoke to the salesperson separately. (Id., at ¶ 27.) Barcel overheard Officer Barry tell the salesperson that Jaguar and Barcel were "illegitimate" and were "scamming him," and he offered to give the salesperson a ride home if he wanted to quit. (Id.) Barcel attempted to assert his innocence and explain the nature of a commission-based business, but Officer Barry indicated that he planned to make a complaint to the Attorney General's Office.

(Id., at ¶ 28.) Barcel and the salesperson were released later that day. (Id., at 29.)

On July 26, 2007, following the incident in Walden, the salesperson who had been arrested with Barcel left his position with Jaguar. (Id., at 32.) The same day, two (2) salespeople traveled to Poughkeepsie, New York, to sell magazine subscriptions. (Id., at 34.) While in Poughkeepsie, they asked a Poughkeepsie Police Officer for advice about Officer Barry's remarks, and they were subsequently taken to the Attorney General's Office and the Department of Labor. (Id.) The salespeople left their positions with Jaguar the following day. (Id.)

On July 28, 2007, Carlisle was soliciting in Fishkill, New York, when he was stopped by police officers. (Id., at ¶ 39.) The Officers indicated that Carlisle was not under arrest, but that they wished to speak to him. (Id.) Carlisle subsequently followed the officers to the Fishkill Police Department, where another salesperson was waiting for him. (Id.) The officers informed Carlisle that the salesperson stated he was being held against his will, and questioned Carlisle as to how to the salesperson got paid, and where his belongings were. (Id.) After Carlisle and the salesperson left, the salesperson denied saying that he was being held against his will, and informed Carlisle that the officers detained him to inquire as to his pay. (Id., at ¶ 42.) Jaguar then terminated the salesperson's position and provided him with a return ticket to Minnesota. (Id., at ¶ 43.)

On August 3, 2007, at 6:00 a.m., Plaintiffs were served with a subpoena by Defendant, the Attorney General, directing them to appear in court on August 17, 2007. (Id., at ¶¶ 49-50.) Several days later, Defendant's office issued a press release detailing the charges against Jaguar and Plaintiffs. (Id., at ¶ 51.) Both a press conference and newspaper articles, as well

4

investigations by other states, followed. (See Id., at ¶¶ 74, 87.) Plaintiffs maintain that Defendant and his office failed to investigate the frivolous complaints made by former salespeople and Officer Barry, leading to serious harm to their reputations and business. (Id., at ¶¶ 52-53, 88-98.)

Plaintiffs allege that Defendant's acts "deprived plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United Sates by the Fourth, Fifth, Eight, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983." (Id., at ¶ 103.) Plaintiffs further allege that Defendant made defamatory statements, committed a prima facie tort, and internally inflicted emotional distress upon Plaintiffs. (Id., at ¶¶ 143-165.)

II.     Standard of Review on a Motion Pursuant to Rule 12(b)(6)

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson, 551 U.S. at 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081. See also Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008). However, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868

(2009) (quoting Twombly, 550 U.S. at 555, 127 S. Ct.1955, 167 L. Ed. 2d 929). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.'" Ashcroft, --- U.S. ----, 129 S. Ct. at 1949, 173 L. Ed. 2d 868 (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, --- U .S. ----, 129 S. Ct. at 1949, 173 L. Ed. 2d 868.

In deciding a motion to dismiss, the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008), *cert. denied*, 128 S. Ct. 2964, 171 L. Ed. 2d 906 (2008) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)). However, this standard "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, --- U .S. ----, 129 S. Ct. at 1949, 173 L. Ed. 2d 868. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950.

In determining a motion to dismiss pursuant to Rule 12(b)(6), the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers, 282 F.3d at 152-53.

III.     Section 1983 Claims

   A.    Section 1983

Section 1983 provides, in pertinent part, that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (internal quotations and citation omitted). Thus, to state a claim under Section 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Moreover, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Moffitt v.

Town of Brookfield, 950 F.2d 880, 886 (2d Cir.1991) (citing McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir.1977), cert. denied, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065-66 (2d Cir.1989).

Plaintiffs assert several claims pursuant to Section 1983: (1) a Fourth Amendment false arrest claim regarding Barcel's arrest by the police officers in Walden, New York (the "False Arrest Claim"), (Amend. Comp., at ¶¶ 105-06); (2) a Fourth Amendment malicious prosecution claim regarding Defendant's actions in initiating the special proceeding in state court (the "Malicious Prosecution Claim"), (Id., at ¶¶ 107-115); (3) a conspiracy claim alleging that "Defendant conspired and acted in concert to do whatever was necessary, lawful or not, to cause the prosecution of the plaintiffs," (the "Conspiracy Claim") (Id., at ¶¶ 116 - 21); (4) a claim that Defendant's extrajudicial statements in the press release deprived Plaintiffs of a fair trial (the "Fair Trial Claim"), (Id., at ¶¶ 122 - 30); (5) a Fourteenth Amendment "Stigma Plus" claim, alleging that Defendant's extrajudicial statements damaged Plaintiffs' reputations and business interests in violation (the "Stigma Plus Claim"), (Id., at ¶¶ 131 - 142); and (6) a general claim that Defendant's acts "deprived plaintiffs of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth, Fifth, Eighth, and Fourteenth Amendments," (the "General 1983 Claim"), (Id., at ¶ 103).

B.   The False Arrest Claim

Plaintiffs allege that, as a result of the false arrest of Barcel by Officer Barry in Walden, New York, Barcel "was deprived of his liberty, was denied fundamental constitutional rights, was publicly embarrassed and humiliated, was caused to suffer severe emotional distress, had [his] personal and professional reputation[] destroyed, and lost a significant aspect of [his] livelihood[] as [a] magazine editor and/or independent contractor[]." (Amend. Compl., at ¶ 106.) To succeed on a claim of false arrest pursuant to Section 1983, a plaintiff must prove the same elements required pursuant to New York State law, that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. See Savino v. City of New York, 331 F.3d 63, 75 (2d Cir.2003); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir.1996). However, the Amended Complaint alleges that Officer Barry and other Walden police officers caused Barcel's confinement, not Defendant. (Am. Compl., at ¶ 25.) Plaintiffs do not allege that Defendant encouraged Officer Barry to arrest Barcel, provided false information to Officer Barry leading to Barcel's arrest, or even had knowledge of Barcel's arrest. See TADCO Const. Corp. v. Dormitory Authority of State of New York, 700 F.Supp.2d 253, 268-69 (E.D.N.Y. 2010) (noting that an individual who is not a police officer may be liable for false arrest if "'plaintiff can show that defendant instigated his arrest' . . . [or] provid[ed] false information leading to an arrest . . . ")(quoting Rateau v. City of New York, 06-CV4751, 2009 WL 3148765, at *4 (E.D.N.Y. Sept. 29, 2009); Weintraub v. Bd. of Educ. of New York, 423 F.Supp.2d 38, 49

(E.D.N.Y.2006)). Therefore, as Plaintiffs cannot demonstrate that Defendant intended to confine Barcel, Defendant's motion to dismiss Plaintiffs' false arrest claim is granted.

C.  The Malicious Prosecution Claim

Plaintiffs allege that Defendant "proceeded on flimsy and untenable evidence" for the "sole purpose of securing an indictment against the plaintiffs" and that "Defendant lacked probable cause to initiate proceedings against the plaintiffs." (Amend Compl., at ¶¶ 108-10.) However, Defendant contends that he "is absolutely immune from the § 1983 claims arising from the state court proceeding." (Def. Mem. of Law, at 6.) The Second Circuit has held that:

> Absolute immunity affords "complete protection from suit," Harlow v. Fitzgerald, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), because it gives "public officials entrusted with sensitive tasks a protected area of discretion within which to carry out their responsibilities," Barr v. Abrams, 810 F.2d 358, 361 (2d Cir.1987), so that they will not feel "constrained in making every decision by the consequences in terms of [their] own potential liability in a suit for damages," Imbler v. Pachtman, 424 U.S. 409, 424-25, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The doctrine's nature "is such that it 'accords protection from . . . any judicial scrutiny of the motive for and reasonableness of official action,'" Shmueli v. City of New York, 424 F.3d 231, 237 (2d Cir.2005) (quoting Robison v. Via, 821 F.2d, 913, 918 (2d Cir.1987)), even where the challenged conduct was motivated by a wrongful motive or even malice, Bernard v. County of Suffolk, 356 F.3d 495, 503 (2d Cir.2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985)).

In re NYSE Specialists Securities Litigation, 503 F.3d 89, 95-96 (2d Cir.2007).

Under federal law, prosecutors enjoy absolute immunity from liability in suits seeking

monetary damages for acts carried out in their prosecutorial capacities. See Imbler, 424 U.S. at 430, 96 S.Ct. 984, 47 L.Ed.2d 128; Parkinson v. Cozzolino, 238 F.3d 145, 150 (2d Cir.2001). Absolute prosecutorial immunity applies, *inter alia*, when a prosecutor prepares to initiate and pursues a prosecution, see, e.g. Peay v. Ajello, 470 F.3d 65, 68 (2d Cir.2006), or engages in administrative duties that are directly connected with the conduct of a trial, Van de Kamp v. Goldstein, ---U.S. ----, ---- - ----, 129 S.Ct. 855, 861-2, 172 L.Ed.2d 706 (2009); see also Warney v. Monroe County, 587 F.3d 113, 124 (2009) ("[A] prosecutor enjoys absolute immunity even when doing an administrative act if the act is done in the performance of an advocacy function.") (citations omitted).

Once absolute immunity attaches, it "attaches to [the prosecutor's] function, not the manner in which he performed it. . . . Accordingly, a prosecutor's motivation, and whether preferable alternatives to the actions taken were available, are irrelevant." Parkinson, 238 F.3d at 150 (internal quotations and citations omitted); see also Shmueli, 424 F.3d at 237 (holding that once the court determines that the challenged prosecution was not clearly beyond the prosecutor's jurisdiction, the prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive).

Section 63 of the New York Executive Law permits the Attorney General to "[p]rosecute and defend all actions and proceedings in which the state is interested," specifically those actions in which he seeks to enjoin a person's "repeated fraudulent or illegal acts . . . in the carrying on, conducting or transaction of business." (McKinney's Executive Law § 63(1), (12).)

11

Accordingly, when Defendant investigated the Plaintiffs' actions and initiated the special proceeding against Plaintiffs, he was acting "within the scope of [his] legal enforcement duties," and is therefore immune for any claim arising from his commencement or continuation of the special proceeding against Plaintiffs. See Augustyniak v. Koch, 588 F.Supp. 793, 797 (S.D.N.Y. 1984), *aff'd* 794 F.2d 676 (2d Cir. 1984), *cert. denied* 474 U.S. 840 (1985) (holding that defendants, who "were all attorneys enforcing compliance with New York City administrative and statutory codes . . . [which] expressly permitted the initiation of civil proceedings, . . . were acting within the scope of their duties as executive officials enforcing the municipalities' laws [and] [a]s such . . . [were] immune from liability for these actions carried out within the scope of their legal enforcement duties"). See also Taylor v. Windsor Locks Police Dept., 71 Fed.Appx. 877, 879 (2d Cir. 2003) (holding that a plaintiff's claims against the assistant attorney general's regarding prosecutorial actions taken within the judicial phase of the criminal process were properly dismissed as barred by absolute immunity); Linder v. New York State Police, No. 1:07-CV-0371, 2007 WL 1288027, at * 2 (N.D.N.Y. Apr. 30, 2007) (noting that the Attorney General is "immune from Section 1983 liability, to the extent Plaintiff's claims against [him] are based upon [his] actions in prosecutorial matters"). Consequently, Defendant's motion to dismiss Plaintiff's Malicious Prosecution Claim is granted.

D. The Conspiracy Claim

Plaintiffs allege that "Defendant conspired and acted in concert to do whatever was necessary, lawful or not, to cause the prosecution of the plaintiffs." (Amend Compl., at ¶ 117.) To survive a motion to dismiss a Section 1983 conspiracy claim, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello v. County of Nassau, 292 F.3d 307, 324-325 (2d Cir.2002). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." Ciambriello, 292 F.3d at 325 (internal quotations and citation omitted).[2]

The Amended Complaint alleges that Defendant conspired with "his employees[,] agents[,] and servants" by relying upon false evidence and misleading testimony to "deprive

---

[2] The Second Circuit has declined to specifically consider whether the pleading requirements for a Section 1983 conspiracy claim set forth in Ciambriello remain valid in light of two subsequent Supreme Court decisions, Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) and Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), which rejected heightened pleading standards in general. Toussie v. Powell, 323 F.3d 178 (2d Cir.2003). Nevertheless, following Toussie, the Second Circuit, as well as other courts in this Circuit, consider to evaluate Section 1983 conspiracy claims pursuant to the pleading standard set forth in Ciambriello. See Krug v. McNally, No. 07-1015-cv, 2010 WL 772988, at * 1 (2 Cir. Mar.8, 2010) (quoting Ciambriello's standard for pleading a Section 1983 conspiracy claim); Orr ex rel. Orr v. Miller Place Union Free School District, No. 07-CV-787, 2008 WL 2716787, at * 4 (E.D.N.Y. July 9, 2008) (citing cases)

plaintiffs of important and well-established constitutional rights." (Amend. Compl., at ¶¶ 119-20.) However, "[u]nder the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together." Quinn v. Nassau County Police Dep't, 53 F.Supp.2d 347, 359 (E.D.N.Y.1999); see also Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir.1978), cert. denied, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978); Girard v. 94th and Fifth Avenue Corp., 530 F.2d 66, 71 (2d Cir.1976), cert. denied, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976). "This is particularly so where the officers and employees are alleged to be acting within the scope of their employment." Rini v. Zwirn, 886 F.Supp. 270, 291 (E.D.N.Y.1995). As Plaintiffs do not allege that Defendant or his employees were acting outside the scope of their employment, the intracorporate conspiracy doctrine bars their conspiracy claim, and therefore, Defendant's motion to dismiss the Conspiracy Claim is granted.

### E. The Fair Trial Claim

Plaintiffs allege that Defendant "made extrajudicial statements to the press regarding the plaintiffs," which created "a highly prejudicial and inflamed atmosphere against the plaintiffs." (Amend. Compl., at ¶¶ 123, 128.) To prevail on a Section 1983 violation premised upon a prosecutor's extrajudicial pretrial statements, a plaintiff must demonstrate that: (1) there were "improper leaks;"[3] (2) "'plaintiff [has] in fact been denied [his] due process rights;'" and (3

---

[3] The Second Circuit has defined "improper leaks" as:
(A) in the pre-arrest or information stage . . . extrajudicial statements for

14

"other remedies were not available, or were used to no avail, to alleviate the effects of the leaks, e.g., a thorough voir dire, utilization of challenges both peremptory and for cause, a motion to disqualify a biased judge. . . , a motion to change venue, or the like." Powers, 728 F.2d at 105 (quoting Martin v. Merola, 532 F.2d 191, 194 (2d Cir.1976)).

The "improper leaks" alleged by Plaintiffs include a Press Release issued by the Attorney General's Office, dated August 8, 2007, entitled "Attorney General Cuomo Sues Magazine Subscription Company to Halt Exploitation of Young Workers," (see Amend. Compl., Ex. III), and a New York Daily News article, dated August 9, 2007, entitled "Magazine Business Paid Slave Wages, Cuomo Says," (see id., at ¶ 74.)[4] However, Plaintiffs have not alleged that these pretrial publications would taint the jury pool in the state proceeding so as to deprive them of a

---

> public communication going beyond the public record and unnecessary to inform the public that investigation was under way or going beyond a mere description of the general scope of the investigation or (B) in the post-arrest or information stage such statements relating to (1) the prior criminal record or character or reputation of [a party], (2) the existence and content of any admission or statement of [a party] or the refusal or failure of [a party] to make any statement, (3) the identity, testimony, or credibility of prospective witnesses, (4) the guilt or innocence of [a party] or other matters relating to the merits of the case or the evidence in the case, or (5) other matter improper within the canons of ethics and standards relating to prosecutorial functions and fair trial/free press.

Powers v. Coe, 728 F.2d 97, 105 (2d Cir. 1984).

[4] "The press release [and article] may be considered on this motion to dismiss because plaintiff references [them] in paragraph [74 and Exhibit II] of the Amended Complaint and because this Court may take judicial notice of it as a matter of public record." Mitchell v. Home. 377 F.Supp.2d 361, 367, n.1 (S.D.N.Y. 2005).

15

fair trial or that such "remedies as voir dire, peremptory challenges and challenges for cause, and change of venue" would be unavailing. See Schiavone Const. Co. v. Merola, 678 F.Supp. 64, 66 (S.D.N.Y.,1988). Accordingly, Defendant's motion to dismiss Plaintiffs' Fair Trial Claim is granted.

E. The Stigma Plus Claim

"To formulate a claim under the Due Process Clause of the Fourteenth Amendment, a plaintiff must demonstrate that he or she possesses a constitutionally protected interest in life, liberty, or property, and that state action has deprived him or her of that interest." Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir.1994). Plaintiffs allege that Defendant's extrajudicial statements deprived them of their liberty interest in their reputations and caused the loss of various business contacts. (Amend. Compl., at ¶¶ 137-41.) However, even false defamatory statements by a state actor "will not support a [Section] 1983 claim if the only injury is to the plaintiff's reputation." Hall v. Marshall, 479 F.Supp.2d 304, 314 (E.D.N.Y. 2007). "Governmental defamation is actionable only if it falls within the so-called "stigma plus" doctrine." Id.

To survive a motion to dismiss on their "stigma plus" claim, Plaintiffs must allege: "(1) the utterance of a statement about [them] that is injurious to [their] reputation, 'that is capable of being proved false, and that [they] claim[] is false,' and (2) 'some tangible and material

16

state-imposed burden . . . in addition to the stigmatizing statement.'" Velez v. Levy, 401 F.3d 75, 87 (2d Cir.2005) (quoting Doe v. Dep't of Pub. Safety ex rel. Lee, 271 F.3d 38, 47 (2d Cir.2001), rev'd on other grounds, Connecticut Dept. of Public Safety v. Doe, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003)). The "state-imposed burden or alteration of status must be in addition to the stigmatizing statement," and any damage that merely flows from the injury of a plaintiff's reputation is not actionable pursuant to Section 1983. Sadallah v. City of Utica, 383 F.3d 34, 38-39 (2d Cir. 2004) (quotations omitted). See also Siegert v. Gilley, 500 U.S. 226, 234, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991) (noting that although "[m]ost defamation plaintiffs attempt to show some sort of special damage and out-of-pocket loss which flows from the injury to their reputation . . . so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, . . . it is not recoverable in a [Section 1983] action"); Valmonte v. Bane, 18 F.3d 992, 1001 (2d Cir.1994) (noting that the "deleterious effects which flow directly from a sullied reputation . . . [which] normally include the impact that defamation might have on job prospects, . . . romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation" are insufficient to meet the "plus" aspect of the "stigma plus" test).

Even assuming, *arguendo*, that Defendant's press release detailing the charges against Plaintiffs constituted defamation, Plaintiffs have failed to allege a state-imposed burden necessary for invoking the "stigma plus" doctrine. Plaintiffs contend that "[a]s a result of [Defendant's] extrajudicial statements to the press, the plaintiff[s'] reputations were severely and

17

permanently damaged . . . [and] plaintiffs had [their] contract with publishers [sic] representatives summarily terminated." (Amend Compl., at ¶¶ 137-38.) "These harms, however, are not in addition to the alleged defamation,, but rather are direct deleterious effects of that defamation." Sadallah, 383 F.3d at 39 (holding that damage to the plaintiff's business reputation and deprivation of the good will in plaintiff's business was merely a deleterious effect of the defamation). See also Conte v. County of Nassau, NO. 06-CV-4746, 2008 WL 905879, *15+ (E.D.N.Y. Mar 31, 2008) (holding that plaintiff failed to allege a due process claim, as his "allegations relate solely to the financial harm caused to his business by defendants' defamation." Therefore, as Plaintiffs have failed to allege a violation of due process, Defendant's motion to dismiss the Stigma Plus Claim is granted.

F.  The General 1983 Claim

In a conclusory and vague manner, Plaintiffs allege that the Defendant's acts "deprived plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983." (Amend. Compl., at ¶ 103.) However, even reading Plaintiffs' Amended Complaint liberally, this Court is unable to discern any alleged Fourth or Fourteenth Amendment claims which it has not already addressed. Moreover,

Plaintiffs' "reliance on the Fifth Amendment is construed as an invocation of the Fourteenth Amendment, because the latter applies to due process violations or takings by state rather than federal actors" and Plaintiffs have not alleged any wrongdoing by federal actors. Kramer v. New York City Bd. of Educ., No. 09-CV-1167, 2010 WL 2010462, at *1 (E.D.N.Y. 2010). Finally, Plaintiffs allege no facts which could conceivably invoke Eight Amendment protection against excessive bail, excessive fines, or "cruel and unusual punishment." U.S. Const. Amend. VII. See also Ingraham v. Wright, 430 U.S. 651, 664-68, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (noting that "every decision of [the Supreme] Court considering whether a punishment is "cruel and unusual" within the meaning of the Eighth and Fourteenth Amendments has dealt with a criminal punishment") Accordingly, Defendant's motion to dismiss the General 1983 Claim is granted.

IV. Plaintiffs' State Law Claims

Plaintiffs assert the state law claims of defamation, intentional infliction of emotional distress, and *prima facie* tort based upon Defendant's issuance of the press release and commencement of the special proceeding against Plaintiffs. (Amend. Compl., at ¶¶ 143-66.) Pursuant to 28 U.S.C. § 1367, a federal district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that

they form part of the same case or controversy . . . . " However, a district court "may decline to exercise supplemental jurisdiction" if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C § 1367(c)(3). Since Plaintiff's federal claims fail as a matter of law, there is no independent basis for federal jurisdiction over Plaintiff's state law claims. See e.g., United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Hartline v. Gallo, No. 03 Civ.1974, 2006 WL 2850609 (E.D.N.Y. Sept. 30, 2006).

Accordingly, Plaintiffs state law claims are dismissed without prejudice.

V. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is granted. The Clerk of the Court is directed to close this case.

_____
SANDRA J. FEUERSTEIN
UNITED STATES DISTRICT JUDGE

Dated: September 15, 2010
Central Islip, New York